Good morning and welcome everyone. We have five cases on this morning's argument calendar and a sixth case that we'll consider on the briefs and we'll begin at the top with appeal numbers 21, 32, 34, and 3308. Smykla v. Molinaro or Molinari, I may be not right on that, and others. And good morning Mr. Vanderweide, it's up to you. Thank you, your honor. Good morning, your honors. May it please the court. I am Vernon Vanderweide for Plaintiff's Appellants. Johnson Controls undervalued its shareholder stock in order to dilute their equity in Tyco and structured its merger with Tyco to be taxable to its shareholders, both of which were done to benefit itself and its directors. These benefits included $450 million of U.S. tax savings for JCI, avoiding $4 million in anti-inversion excise taxes for its officers and Let me just cut to the chase here. You've made it very clear that you, it's the position of the plaintiffs, that this transaction was adverse to the shareholders as compared to, say, the directors and the highly placed leadership. But my question, which I think was the district court judge's question too, is why is this a failure to disclose case? I can certainly understand it as a breach of fiduciary duty and I certainly understand that sometimes breach of fiduciary duty and failure to disclose overlap, but I don't understand why in this enormous proxy statement the things that you're complaining about were not called to the attention of the shareholders and why they were not actually urged in a number of different places to seek their own legal counsel, financial counsel, whatever they wanted to before voting. So please tell me why this, why this turns into a failure to disclose based on this proxy statement. Your Honor, that is to heart one of the holdings of the district court, that is correct. I think the law is clear that urging shareholders to go seek their own counsel is not the way the Securities Exchange Act of 1934 and specifically 14A were designed in their protection. Well that's just one part of it though, right? I mean, for example, the valuation of the shares and various things are put forth in the proxy statement, are they not? No, Your Honor, they are not put forth in an honest and candid and in a completely disclosed manner. But starting at the top of your question, Virginia Bank shares, the United States Supreme Court made absolutely crystal clear, as did actually the predecessor case in Santa Fe Industry versus Green, the U.S. Supreme Court made absolutely clear that just because a fact may support both a failure to disclose under section 14A and also supports a breach of fiduciary duty, that that fact doesn't become somehow compartmentalized so that it can only be seen as supporting a breach of fiduciary duty and not as supporting 14A of the 34 Act. But you still have to show failure to disclose. So here's a concrete example. The proxy statement did disclose that Johnson was going to try to keep its shares, the shareholders' equity under 60 percent and it even disclosed that their equity needed to stay below 60 percent to avoid anti-inversion penalties. So why wasn't that enough to put the shareholders on notice about the goals of the merger? Well, the disclosure as to the percentage of shares, yes, there is a so-called 60 percent test that's disclosed in one part of this enormous proxy statement. It's disclosed under a paragraph that's entitled tax matters. It's disclosed that I think it's about page 202 of the almost 500 page proxy statement. And in that paragraph, the only thing that's disclosed about the 60 percent test is that we don't think we'll meet it. It's a it's a tax matter and we don't think we'll meet it because we expect that our shareholders will be under 60 percent. That did not disclose the purpose of diluting the shareholders to under 60 percent. It did not disclose to the shareholders what their percentage ownership of the combined company would be in the event that there was no motive by JCI and Tyco to reduce JCI shareholders' equity to under 60 percent. It did not disclose all of the damages that were arising from that, namely the loss of 9 to 11 percent of equity in the combined company, and it did not disclose the taxes, the purposeful decision to avoid a provision of the Internal Revenue Code that would enable Johnson Controls to make a choice, to do a study to make a choice as to whether it or its shareholders should bear the brunt of the anti-inversion taxes that Congress imposed to discourage these kinds of transactions. Mr. VanderWide, that line of argument brings me back to Judge Wood's comment that that sounds to me in an allegation of either a violation of the self-enrichment aspect of your argument, that the directors and officers were going to enrich themselves at the expense of the shareholders given that the tax would fall at the shareholder level as a breach of a duty of loyalty, as opposed to any failure to disclose. Well, it certainly did all of those things, but Santa Fe, Virginia bank shares, all those Virginia bank shares, breach of a duty claim. All of the cases in this circuit that have addressed this issue have breach of a duty claims. But can I can I just interrupt and say, I mean, the concern as I read the district court's opinion is the district court is well aware of the finding of what the Supreme Court said in Virginia bank shares and in Santa Fe, but doesn't find that on these disclosures. We don't have the deceptive failure. Over and over again the district court says the plaintiffs are asserting deceptive omissions, the plaintiffs are just asserting failures to disclose, but it's not there. And part of you seems to be saying, you know, that 500 some odd pages wasn't enough, you know, maybe this should have been a thousand page proxy statement, and part of you seems to be saying, you know, that maybe it needed to be 15 pages long, you know, just to the problems. And I can't quite tell, but you need to cope with the district court's findings that the particular things that you allege were in fact not misleading. Well, the district court's attitude about the fact cannot prove both fraud and... But she never says that. I mean, you say she says that, but show me where she says that exactly. She said it twice, and we quoted it twice in our reply brief. Give me a page. I don't have the page in front of me, but she says twice that this is not fraud, it's not fraud because it's a breach of fiduciary duty. No, no, she says it's not fraud, but that's on these facts. She doesn't ever say that it's impossible, it just wasn't on these facts. We're only contesting these facts, and we're not trying to establish law for fraud. When we've invited, probably the telling item here is in our reply brief, excuse me, in our reply brief, we noted... Which is, by the way, way too long. I mean, you spend all but about two pages on... Anyway, we noted that the defendants did not respond to our challenges of where in this proxy statement did they make specific disclosures responsive to our allegations of material emissions. Mr. Vanderweide, let me tell you what's been the biggest difficulty for me, and when I read your blue brief and your reply brief, I thought, okay, I get it. I get what they're saying, but what I can't do is then crosswalk that back to the and that's where I think the district court's analysis is one on the so-called puzzle pleading and all of that. And I'll tell you, I tried. And here's what I mean. I tried with two different examples. One that seems pretty important to your whole theory about the merger being taxable at the shareholder level, okay? And when I look at your complaint, you get into that at about page or about paragraph 185 at the appendix page 71, but then when you get to paragraph 186 and you do this over and over and over again, you say, the disclosure in the S-4 about the taxability was misleading because... And then there's a long list. This one I think goes, and it has subparts, it's over 30 items, but what I can't find anywhere is what you were statutorily obligated to do, and that is the statute requires you to provide the reasons why the statement is misleading. I tried. We're conducting our own independent de novo review here. I tried to do it, and I can give you another example too, but I read every single paragraph of this applicable portion of the complaint. I looked at what you said was omitted, but I can't figure out why it's misleading because it is plainly disclosed to the shareholders that this will be taxable to them. But your Honor, what was not disclosed, what was not disclosed is they had a choice. It was not an inevitable consequence of choosing the inversion form of the merger. They had a choice under the Internal Revenue Code. That's business judgment. Why is that, why does that make the S-4 misleading? Because a shareholder is told and is given to understand, our allegation that the shareholder is given to understand that the taxability is an inevitable consequence of the choice of the inversion form for the merger. However, that choice, that was a choice. It was not inevitable. JCI could have done an investigation. It has since disclosed in pleadings that it did not do so. It could have tried to determine whether it or its shareholders should bear that particular tax. It did not do so. Yes, it's a business judgment. We will question that in that context. However, it was their directors said as much when they called it a negative factor, but in fact it was not. My bottom line question for you is even if that that theory is right, you still have to untangle that from the fiduciary duty points that Judge Wood is making. But where in the world is the kind of clarity that you're getting? It is impossible to trace this through. You have long lists. You have all kinds of cross-references that pick up paragraphs after multiple paragraphs. There's a real disconnect between what you're doing in the courtroom and what's in this complaint. Well, in terms of treating this court was able to piece it together. Yes, she said she had some difficulty. The defendants presented a motion to dismiss. Many courts have said that does not mean there's puzzle pleading. The complaint is organized in a way that the courts have said is acceptable by putting together the various subjects and listing the reasons why they were misleading. Trying to achieve both, comply with both the short-form statement of a complaint and the PSLA requirements of alleging every fact that makes a statement misleading and all of your misleading statements is a challenge in a case like this. And we have felt that we presented a complaint that laid out all of the facts and explained why there were omissions that rendered statements that we identified misleading. It's the last part that I don't think you did. I think you definitely identified the portions of the S-4 that you thought were problematic, primarily by block quoting. And I think you absolutely listed what you believe was omitted. But I don't think you stitched those two things together. Well, I see that. I have reserved some time. No, we'll give you some rebuttal time. Okay. Thank you very much. Thank you. Mr. House, good morning. We'll turn to you. Thank you very much, Your Honor. I'm Brian House for the defendants. I think most of the things that I was going to touch on have already been raised, but I will highlight a few things that the court seemed to understand. The complaint is a disaster. I've probably spent more time trying to figure it out than anyone, and it is extremely, extremely difficult. The problem, as you pointed out, is that you cannot tie the omissions. And by our best guess, there's roughly 200 of them, 32 in paragraph 186 alone. But wouldn't you agree that in a situation where the PSLRA applies, that's going to dominate the rules for pleading? You can't do a Rule 8 short and plain statement of the claim and at the same time provide the specificity that the PSLRA requires. So the plaintiffs did have to be somewhat verbose in the complaint. Well, I'm not sure that there's, I mean, there's some tension, I understand. There is tension. But you can do both. I mean, you could, you can plead a plain and simple complaint that identifies the false and misleading statement. But what if you think there are 25 false and misleading statements? You have to be, for each one of them, you've got to give the detail that the PSLRA is calling for. Now, maybe they didn't do that in this complaint. Maybe these block quotes and then just conclusory, here are the 35 things that are wrong with it, kinds of passages are simply not informative enough for a defendant to be able to respond effectively. But you do need the detail. Well, what I think Rule 8 talks about is making it plain enough to understand. Especially in an omission case, right? If they had misstated an actual fact, then it's pretty easy to say, you said black, it's really white, that's deceptive and misleading and so on. The omission cases, I think, are much more difficult. They are more difficult. But the PSLRA, and we can turn to the substance of 14A, you really have to start with the statement in the proxy. And that's, I think, where the plaintiffs fall down. Because you start with the statement in the proxy, and then the omitted facts must render that statement made materially false or misleading. Plaintiffs agree that nothing is false, so we're really just talking about misleading. And in their brief... What Mr. Vanderwyde is saying is that the proxy is somehow telling the shareholders it's this or nothing. Whereas, in fact, a business judgment has been made to restructure the companies as they were being done, not in some other way that would have changed the tax incident. Well, right. And Mr. Vanderwyde said repeatedly here that the plaintiffs were given to understand that there was this inevitable consequence. But the proxy doesn't say that. The proxy doesn't say anything about that. The proxy says, here's the deal. The problem in this case is that the plaintiffs liked the deal, but they wanted it structured a different way. And that just permeates the entire, all three things that Judge Pepper found, the failings that she found in her opinion. I want to turn back to the PSLRA because you are inviting us to just stop the inquiry at Rule 8 and the PSLRA because of the issues we've been discussing with the complaint. But had the district court done that, that would have just been a dismissal without prejudice. And doesn't the situation we're presented with require us really to sort through the plaintiff's allegations, as the district court did, before even entertaining the idea of dismissal with prejudice, which is, of course, what you would want at the end of the day. And then doesn't that point to a tension between saying, you know, this complaint is a disaster, we can't tell what they're saying, and the reality that, you know what, the district court did figure out what they were saying, and we worked really hard, and I think we figured out what the complaint is saying. I'll take the last point first, Judge. The fact that we think we figured it out shouldn't excuse that complaint. I think it was this court, in the Garst case we cite in our brief, where that was the defense. Well, everybody figured it out, and I think it was Judge Easterbrook said, well, that's not an excuse. We shouldn't have to go through this process looking for the gold coin in the bucket of mud. I understand. The other problem with it, too, is that Mr. Vanderweide says, well, they figured it out, but throughout this litigation, they have repeatedly argued that we didn't address all of the omissions. And he says, well, Judge Pepper figured it out, but in their briefs, they load up all these different things that they say Judge Pepper didn't address or didn't address thoroughly enough. And that just goes to how confusing and difficult it was to manage almost 200 omissions. And we tried desperately to bucket them into different categories, and we think we got through it, but we shouldn't have to do that. With respect to whether we should be addressing the merits of the 14A claim, on the pleading issues, plaintiffs had already amended their complaint once in this case. So I don't know that we can assume that they would have been able to do it again. But that was before they had notice from the district court about the problems in their complaint. That's true. They amended after they lost the injunction motion. But they never once asked for leave to amend, ever, in this case. And the injunction motion, if I remember correctly, was focusing on the breach of fiduciary duty theories that they were advancing. It was. And I think that tells you a lot about this case. When they're trying to get their injunction, what's their best shot at reasonable likelihood of success? And it was breach of fiduciary duty. And we went all through the elements of fiduciary duties in Wisconsin, the business judgment rule, and Judge Pepper said, yeah, no, we don't have a reasonable likelihood of success. And that was sought before the merger closed, right? It was right around the time the merger closed. But what they were trying to enjoin at the time was the tax treatment of the transaction. It was a very interesting attempt to stop the tax treatment of the transaction. But not the transaction itself. The transaction closed, I believe, on September 2nd, and that motion was filed a week or two later to stop JCI from filing the necessary tax forms. Mr. Hauss, do you know of a 14A case law anywhere in the United States that discusses an obligation to disclose different proposed structures to transactions? I do not. No. I think the case law is clear, and there's a Ninth Circuit case, Meyer Cord, that we cite in the brief somewhere, that says you don't have to disclose different options, different alternatives. I mean, can you imagine what proxy statements would look like? Well, we considered this kind of transaction, and then all the pros and cons of different transactions. It's really not feasible, and it runs right into the problem that this court looked at in the Kubler case, I think, a year or so ago, that you can't have all this information. You only have to state the facts, what happened, and state them fairly. Well, the S-4 is describing a transaction that the board has approved. Correct. Right, and it's asking for shareholder approval of the transaction. So the question there becomes, are the disclosures around the proposed transaction sufficient or insufficient, including by omission? But it doesn't require you to go back to your initial discussions with iBankers and others, where presumably there were whiteboard exercises on how can we structure this? Structure it as a straight-up merger, as a purchase, an inversion? How do we want to structure this? Right, right, and what's going on? To your point earlier, that attacks the business judgment rule, and that's Panter, and we don't need to go through the Panter case, which is a 1981 case, but it's still as true as it was then. Kademian followed that. Getting into the business judgment rule and challenging the director's thoughts, and did they think about this, did they think about that? One of those paragraphs that we talked about in the complaint is just a laundry list of questions. Did the board consider this? Did the board consider that? And that's a challenge to business judgment. That's not an issue under 14A, where you're identifying a statement that was made and then trying to detract. Yeah, it has a lot of flavors of a breach of duty of loyalty, too, on a self-enrichment theory. Yeah, it does. Obviously, we don't think that there are merits to the breach of fiduciary duty. But you could still face that. I mean, the district court has relinquished jurisdiction over the supplemental claims. That's correct. Which is the normal thing to do at this early stage. Right. You haven't had that much. So there may be a forum in which you have to explain why these implications that this was a fair transaction were acceptable, given the fact that the shareholders are facing reduced equity in the corporation. They're having to sell shares back at a low market value. They're getting this punitive tax burden. People's retirement is being ruined. The district court is aware that this is a very harsh transaction for everybody except management. She was sympathetic to that. That's true. And we think we have an answer. It's Wisconsin law, the Wisconsin Business Judgment Rule, as I talked about. But, I mean, that's kind of the point of this, and that's why we sought sanctions in this case, because it was so clear that this case belonged in ______. Well, let's talk. Yeah. Go ahead. I did want to discuss that. Sure. Because, you know, you're here asking us to consider sanctions, you know, on our own. That's your first choice, or at least send it back. That's your second choice. But the case you rely on, City of Livonia, involved much more egregious misconduct than what we see here. And then, even in that case, we remanded to the district court to consider sanctions in the first instance. So what can you point to in the record that really warrants, even considering City of Livonia, sanctions here? We think it's the complaint itself, and it clearly is harassing. It needlessly increased the litigation cost here. But those are judgmental words. I mean, it gets back to the point I was making earlier, which is that plaintiffs ______. Congress meant this to happen, just as they did in Rule 9. But plaintiffs in cases governed by the PSLRA are required to come forward with pretty granular information. Whether it wins or loses is not the only question for sanctions. You can lose a case on the pleadings and still not be sanctioned. Of course not. And so, even if we were to agree with you that the district court came to the right bottom line, that comes far short of showing that sanctions are required. Well, you know, I understand. I mean, we think that the conduct is sanctionable, given the ______. I mean, you pointed out immediately, breach of fiduciary duty. Why isn't this a breach of fiduciary duty? Because there ______. And the answer to my question is because there is a theory under which something could be misleading because of omissions. And as I said earlier, I think that is much harder to get your hands around because, you know, there's an almost infinite amount of information that you could throw in there. You know, what critical piece, because it's not there, makes this a misleading omission? That's hard to say. It is hard to say, but you first have to come up with – you have to focus on what was said in the proxy. That's – again, I've already said this. That's the fundamental problem here is that there are just allegation after allegation of omitted facts. And the plaintiffs say, well, the omitted facts weren't disclosed. Well, omitted facts aren't disclosed. Obviously, we understand that. In other words, it's not an either-or. It's not that you either plead 14A or you plead breach of fiduciary duty under state law. You can do both. I mean, we can all get a blank piece of paper out right now and all hypothesize fact patterns where both are present. Your point, or as I'm hearing you, your point is that, well, yeah, but they brought a 14A claim, and we've got to take the 14A claim by its terms, and they don't adhere to the statutory requirement of providing the reasons why the multiple allegations about what was omitted make the S-4 misleading. That's correct. Okay. Anything further, Mr. House? No. Okay. Mr. VanderWeide, we used a lot of your time with questioning, but I think it's appropriate that we give you a few minutes for rebuttal, so why don't you take three minutes? Thank you, Your Honor. If the primary issue here of concern to this court is the form of the pleading, I respectfully submit, Your Honors, that is correctable. When you consider the magnitude of the wrongdoing, which has been hardly touched upon here this morning, and you consider the plethora of law, both from the Supreme Court all the way down to the district courts in this circuit, not insignificantly the several cases issued by this circuit with respect to the coexistence of breach of fiduciary duty and 14A and the complete absence of any case anywhere in the country that has decided a case like Judge Pepper has in this case. Well, can I ask you, though, I mean, if we just hypothetically, if we don't read Judge Pepper as excluding the possibility that there could be both a deceptive omission and on the same facts a breach of fiduciary theory, the same set of facts often supports a couple of different theories. But suppose we think Judge Pepper's opinion read as a whole understands that. I'd like you to address your opponent's argument for sanctions. Well, we believe that our strongest case is that we did not violate the rule 11 because the court's decision on 14A is so extraordinary, so unusual for the reasons I just gave. And she said that she did not dismiss on its merits the state claims, and she was dismissing with prejudice the 14A claim because she said it was not fixable. And she said it was not fixable in an amended motion, in an amended complaint, because of her conclusion that these were breach of fiduciary duty facts, they were not fraud facts, and therefore it was a breach of fiduciary case, and she declined to exercise supplemental jurisdiction. If the court agrees with that approach, then to remand the case for sanctions means looking at those sanctions, but it also should be- But can I ask you also, are there sanctions cases where a court has concluded that theory number one is flawed, but theory number two may have enough to go forward? Well, yes. And most importantly, that if it's remanded, we should be allowed to amend the complaint to correct the, quote, puzzle pleading and to boil it down to what she wanted to see in front of her, which I can understand. It's a complicated case. And sometimes plaintiffs overplead because they aren't sure which facts they're going to end up surviving on and litigating. You never had that opportunity because your repleting was only after the preliminary injunction. It was only after the preliminary injunction, and we came up with a whole new complaint. That's correct, Your Honor. Okay. Thank you, Your Honors. Okay. Thanks to both counsel. The case will be taken under advisement.